IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH THE
CELLULAR DEVICE ASSIGNED CALL
NUMBER **(816) 585-2039,** THAT IS
STORED AT PREMISES CONTROLLED BY
AT&T MOBILITY (CINGULAR)

Case No. 22-mj-08272 -TJJ

**Filed Under Seal**

## AFFIDAVIT AND APPLICATION IN SUPPORT OF A SERCH WARRANT

I, **Jakob E. Blackman**, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number **(816) 585-2039** ("the SUBJECT PHONE"), that is stored at premises controlled by a wireless telephone service provider headquartered at Global Legal Demand Center, 11760 US Hwy 1, North Palm Beach, Florida, 33408.  The information to be searched is described in the following paragraphs and in Attachment A. AT&T Mobility (Cingular) cellular telephone number **(816) 585-2039** (hereafter SUBJECT PHONE) is believed to be used by Benjamin P. Custis.   This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require AT&T Mobility (Cingular) to disclose to the government copies of the information further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2.     I am a law enforcement officer with the Kansas City, Kansas Police Department (KCKPD).  I started my career with KCKPD as a patrolman in October 2011. Before

commencing my law enforcement career, I earned a bachelor's degree in Law Enforcement/Justice Administration from Western Illinois University and later earned a master's degree in Criminal Justice from the University of Central Missouri.  In July 2016, I became a KCKPD detective.  I worked two years in the KCKPD Gang Unit working various gang-related investigations.  I am currently assigned to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) as a task force officer (TFO).  I have investigated a variety of crimes that range from property crimes, narcotics investigations, crimes against persons, and homicides. During my employment, I have received training and have participated in numerous investigations which led to the prosecution of suspects.  I have received training in criminal investigations and my duties include the investigation of federal firearms violations. I have also made hundreds of narcotics arrests and have been trained on the identification of illegal narcotics in the police academy, as well as at ATF.  During my employment, I have been directly involved in numerous investigations which led to the prosecution of suspects for the unlawful use and possession of firearms.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. §§ 922 (u), 924 (i) and 2 (Burglary to a Licensed Firearm Dealer) have been committed by Benjamin P. Custis, Deldrick L. Bryant, Tayvion D. Howard and Jaden C. Chaney.  There is also probable cause to search the information described in these crimes as further described in Attachment B.

2

**PROBABLE CAUSE**

5.      I have probable cause to believe that the above listed things to be seized are located upon said described premises based upon the following facts:

6.      On October 16, 2022, at approximately 12:40 a.m., the Basehor Kansas Police Department responded to a possible commercial burglary at Free State Gun Company located at 14500 Parallel Road, Basehor, Kansas. Free State Gun Company holds a federal firearms license (FFL). When officers arrived, they observed the front door of the business destroyed, allowing officers to enter the structure. When they entered the building, they observed glass display cases broken and numerous firearms missing.

7.      The business owners were alerted by an alarm system and responded to the store. When the owners arrived, they were able to confirm numerous firearms were stolen. A review of Free State Gun Company's loss report indicates 51 firearms were stolen, to include rifles, shotguns, and pistols.

8.      Surveillance cameras were installed within the business and turned over to law enforcement. The video from within the store revealed a white in color Ford F-150 backed up to the front of the business. The door appeared to be destroyed from the truck. At approximatley 12:31 a.m., three individuals entered the business and were observed breaching another door leading the suspects into the main firearms display room. Once inside the room, the three suspects broke the display glass and began carrying firearms from the building to the white Ford F-150. All three suspects appeared to be wearing face coverings, head garments, sweatpants, and long sleeve hoodies. Two of the suspects appeared to be tall and one may have been wearing a pair of glasses. One of the three suspects was not wearing gloves and appeared to be a black male. After approximately two minutes, the three suspects exited the front of the business and

3

are believed to have fled east on Parallel Road.  As set out below, investigators believe the three individuals who entered Free State Gun Company were Benjamin P. Custis, Deldrick L. Bryant, and Jaden C. Chaney.

9.      On October 17, 2022, at approximately 5:00 a.m., deputies with the Johnson County Sheriff's Office responded to an alarm or possible burglary at Up in Arms Kansas gun store located at 33490 Lexington Avenue, #F, De Soto, Kansas. Up in Arms Kansas holds an FFL. When deputies arrived, they observed the front glass door of the business destroyed. Deputies entered the gun store and observed glass display cases broken and numerous firearms missing.

10.     The business owners were alerted and responded to the store. When the owners arrived, they were able to confirm numerous firearms were stolen. After reviewing their inventory, the owners estimated 25 pistols were taken.

11.      Surveillance cameras were installed on both the interior and exterior of the business. The owners of Up in Arms Kansas turned the video over to law enforcement. The exterior video showed a white Ford F-150 pull into the parking lot around 4:57 a.m. The truck appeared to pull up to the front of the store and park. The rear passenger exited the truck, walked up to the front door, and looked through the door before running back to the truck.

12.     The truck was then observed backing up to the front of the business and rammed the front glass door, causing it to break. The driver and rear passenger exited the truck and entered the business. Once inside, the two suspects broke the glass display cases. The two suspects removed several handguns from the display cases and placed the firearms in the bed of the truck. Suspect 01 (Driver) appeared to be a tall thin male wearing a black hoodie, tan ball

4

cap, face covering, light colored jeans, and white and red shoes.  As set out below, investigators determined this person was Benjamin P. Custis.

13.     Suspect 02 (Rear Passenger) appeared to be a tall thin male, wearing a black hoodie, face covering, light colored jeans and silver and black bottomed shoes.  As set out below, investigators determined this person was Tayvion D. Howard.

14.     Suspect 01 and Suspect 02 began making trips back and forth from the store to the truck carrying firearms. On one occasion, Suspect 01 ran back into the store and ran directly into the front of a metal cross beam on the front door that was still intact from the breach. Suspect 01 fell backwards but was able to maintain his balance and continued to retrieve firearms. ATF investigators believed the impact likely caused an injury to the face of Suspect 01. The tan hat from Suspect 01 fell off his head from the impact and landed on the ground inside the store. The tan hat was solid in color with an emblem on the lower corner of front of the hat.

15.     At one point, Suspect 01 tossed a pistol from the display case out the front door toward the back of the white Ford F-150. The firearm struck the back rear glass of the truck causing it to break.

16.     While the theft of the firearms was taking place, a third suspect wearing a white Nike hoodie was observed on an exterior camera sitting in the front passenger seat of the white Ford F-150.  As set out below, investigators believe this person was Deldrick L. Bryant.

17.     After approximately two minutes, Suspect 01 and Suspect 02 re-entered the white Ford F-150 and all three suspects fled the area. Exterior video captured the license plate of the white Ford F-150, it displayed 319RCZ. The registration returned to a 2003 Honda Pilot in Ottawa, Kansas. The Johnson County Crime Lab responded to the scene and began processing evidence. The tan hat that fell from Suspect 01 was photographed and collected on scene.

5

18.     On October 17, 2022, ATF investigators responded to both scenes and began the investigation with local law enforcement. ATF Task Force Officer (TFO) Ryan Fincher and myself, ATF TFO Jakob Blackman, set up an alert system in hopes of tracking the white Ford F-150 by license plate readers (LPR's) across the Kansas City Metropolitan area.

19.     LPR's are cameras set up in various intersections throughout the metropolitan areas allowing license plates to be captured via camera and saved in a database. This tool is often used by police to geographically track suspect vehicles. The LPR alerts allow law enforcement to be notified when a certain license plate is captured by the camera.

20.     On October 17, 2022, Merriam Kansas Detective Kristin Jasinski learned of the FFL burglaries and told members of law enforcement a possible suspect to consider was Benjamin Custis. Detective Jasinski assisted in past theft investigations and knew Custis was involved in a series of FFL burglaries in the past as a juvenile.

21.     On October 18, 2022, I located a Facebook profile for Custis and began looking through some pictures Custis had recently posted before the crimes. I immediately recognized numerous photographs of Custis wearing and holding a tan hat. The tan hat was solid in color with an emblem on the lower corner of front of the hat. The hat appeared to be the same hat recovered from Up in Arms Kansas on October 17, 2022. In one of the photographs posted October 12, 2022, a person wearing light-colored jeans is depicted holding the tan hat while sitting inside a white vehicle. The photo only captured the lower half of the person. The inside of the door panel was visible in the picture and appeared to be the same as the inside driver door of a 2021 Ford F-150. ATF investigators believed Benjamin Custis was likely one of the three suspects involved in the crimes.

6

22.    The Johnson County Crime Laboratory later swabbed the hat collected at Up in Arms Kansas for DNA. The lab had a known sample from Benjamin P. Custis from an earlier and unrelated investigation. On November 2, 2022, the lab published a report revealing their findings. The DNA profile obtained from the swab of the hat indicated a mixture of three contributors. One of the three was a trace contributor, which was not suitable for comparisons. The lab found the DNA results are 11.5 nonillion times more likely if Benjamin Custis and two unknown individuals are the contributors than if three unknown individuals are the contributors.

23.    On October 18, 2022, at approximately 12:53 p.m., I received an LPR notification on Kansas plate 319RCZ at N. 47th Street and Parallel Parkway in Kansas City, Kansas. The notification indicated the truck was traveling eastbound on Parallel Parkway. I began driving toward the area in an unmarked police vehicle. At approximately 1:14 p.m., I observed a white Ford F-150 (hereinafter "the truck") turn west on Parallel Parkway from N. 31st Street. I relayed the information to ATF TFO Cole Massey and TFO Fincher. I followed the truck covertly to the area of N. 38th and State Avenue, Kansas City, Kansas.

24.    I observed the rear window of the truck was wrapped in plastic, which was consistent with the rear window breaking on the White F-150 that was involved in the Up in Arms burglary the day before. The truck pulled into the McDonalds drive-thru and began to order food. Members of the KCKPD Special Operations Unit (SOU) attempted to contact the vehicle utilizing a marked patrol vehicle in front and behind the truck at the drive-through window. As police officers made contact, the truck reversed and struck a parked car before fleeing east on State Avenue.

25.    I began following the truck and relayed the information. A few minutes later, aerial surveillance was able to locate the truck around the 1300 block of State Avenue. ATF

7

investigators began covertly following the truck as the truck traveled out of Kansas City, Kansas and into Kansas City, Missouri.

26.     The truck was tracked via aerial surveillance to the 4500 block of East 75th Terrace, Kansas City, Missouri. Members of the Kansas City, Missouri Police Department Tactical Unit moved in and attempted to stop the truck. Officers were able to move in and apprehend three individuals. The driver was identified as Benjamin P. Custis, the front passenger was identified as Deldrick L. Bryant, and the rear passenger, who fled from the truck, was identified as Keisean Davis. Custis had visible scabs from an injury between his eyes and on his upper lip.  I believe this injury was caused from Custis striking the cross beam at Up in Arms Kansas the day before. It was later learned the truck was reported stolen from Topeka, Kansas.

27.     Numerous firearms were observed in plain view on the rear passenger floorboard of the white Ford F-150. Members of ATF took photographs and collected the firearms in plain view. They included the following firearms:

- Glock, Model 48 .9MM pistol, with serial number BUKG086; Stolen from Up in Arms Kansas in De Soto, Kansas.

- Glock, Model 19 .9MM pistol, with serial number BWRN979; Stolen from Free State Gun Company, in Basehor, Kansas.

- Free State Gun Company Model FS-15, multi-Caliber rifle with serial number 1005; Stolen from Free State Gun Company, Basehor, Kansas.

- Glock, unknown model, .9MM pistol, with serial number BUFW970; Stolen from Free State Gun Company.

28.     ATF investigators located a cellular phone under the front passenger seat of the Ford truck. The phone was identified as a white iPhone with no identifying numbers. On October

25, 2022, I requested and secured a search warrant for this cellular phone and two other cellular phones. (22-mj-08233-TJJ.) The search warrant was signed by the Honorable Teresa J. James. The information from this phone was extracted and later examined. I identified the phone number as (816) 585-2039 (SUBJECT PHONE). The two other phones recovered belonged to Keisean Davis and Deldrick Bryant.

29.     ATF investigators, including myself, responded to Deldrick L. Bryant's residence located at 6623 Wood, Kansas City, Kansas. We contacted Bryant's grandmother who said Bryant did reside at the residence with her. She went on to say he stays in the basement of her house, and she has access to the basement. I explained the crime being investigated to Bryant's grandmother. Bryant's grandmother said she had seen the white truck at her house and knew Bryant hung around the male who usually drove the truck. It was learned from other family members of Bryant's that the male who drove the white truck goes by the moniker, "Lash." "Lash" is the known moniker of Benjamin P. Custis. Members of Bryant's family had seen Custis in the past and knew what he looked like. I was able to confirm with family that the person the family has seen at the house was Custis and Custis drove the white truck.

30.     Bryant's grandmother signed a consent to search the basement, the backyard, and a shed in the backyard of the address. I located a tan purse in a basement closet containing 12 pistols. All the pistols in the bag were stolen from Free State Gun Company or Up in Arms Kansas gun store.

31.     On October 20, 2022, the Independence, Missouri Police Department (IPD) responded to a shooting and located a victim suffering from gunshots. They were able to arrest the subject who was identified as Tayvion Howard. Howard was in possession of seven firearms,

to include five guns reported stolen from Up in Arms Kansas gun store in De Soto, Kansas and one gun reported stolen from Free State Gun Company in Basehor, Kansas.

32.     IPD detectives interviewed Howard and during the interview, it was learned additional stolen firearms were in the basement of 7900 Virginia, Kansas City, Missouri. Detectives believed the home belonged to Jaden C. Chaney, who was affiliated with Custis.

33.     On October 20, 2022, members of the ATF served a federal residential search warrant at 7900 Virginia, Kansas City, Missouri. Chaney was not home during the warrant service, but ATF investigators located an additional eight firearms in the basement of the residence that were reported stolen from Free State Gun Company in Basehor, Kansas.

34.     During the search warrant at 7900 Virginia, Kansas City, Missouri, ATF investigators located two receipts in the basement. The receipts were from DrumMagazine.com and was believed to be for a magazine and ammunition. DrumMagazine.com is located at 4015 Sterling Avenue, Kansas City, Missouri.

35.     The date of purchase was October 17, 2022, at 10:18 a.m. and 10:29 a.m., which was just over five hours after the burglary at Up in Arms Kansas.

36.     ATF Special Agent Belinda Perez was able to view the video and observed four individuals arrive at DrumMagazine.com around 10:08 AM. The four males exited a dark Chevrolet Equinox and entered the business. TFO Blackman was able to identify all four males as Benjamin P. Custis, Deldrick L. Bryant, Tavion Howard, and Jaden C. Chaney. Custis and Howard were wearing the same clothes as Suspect #1 and Suspect #2 at the Up in Arms Kansas burglary.

37.     Jaden C. Chaney was wearing similar clothing to what ATF investigators observed Suspect #3 wearing during the burglary at Free State Gun Company on October 16, 2022.

38.     Deldrick L. Bryant was wearing a black t-shirt, jeans, and white shoes. He wasn't wearing the white Nike hoodie with a black Nike swoosh, which ATF investigators believed he wore during the burglaries at Free State Gun Company and at Up in Arms Kansas. ATF investigators believed Bryant was the suspect sitting in the front passenger seat of the truck during the Up in Arms burglary.

39.     On October 25, 2022, ATF returned to 6623 Wood Avenue and spoke with Bryant's grandmother, Alice Turner. ATF investigators received consent from Ms. Turner to re-search the basement in hopes of locating the white Nike hoodie and white Nike Airforce shoes. TFO Blackman located the hoodie and the shoes next to the far bed in the basement. The hoodie matched what Suspect #2 was wearing during the burglary at Free State Gun Company and what the front passenger in the white truck was wearing during the burglary at Up in Arms Kansas.

40.     ATF investigators believe Custis, Bryant and Chaney committed the burglary at Free State Gun Company on October 16, 2022.  ATF investigators believe the following day, October 17, 2022, Custis and Howard entered the Up in Arms Kansas gun store and Bryant remained in the front passenger seat of the truck.

41.     During the examination of Custis's phone, I located numerous photographs and videos of Custis, further indicating the phone was used by Custis. Messages revealed the phone was being used by Custis prior to and after the investigated crimes.

11

42.     It is believed (816) 585-2039, SUBJECT PHONE, was the phone number used by Benjamin P. Custis.  The requested information would further prove or disprove Benjamin P. Custis's involvement in the burglary at Free State Gun Company and Up in Arm Kansas.

43.     Free State Gun Company is in the city of Basehor, Kansas, and Up in Arms Kansas is in the city of DeSoto, Kansas. I am requesting the listed information from October 1, 2022, to October 19, 2022. The requested time frame before and after the crime on October 16, 2022, and October 17, 2022, may show the frequency that the SUBJECT PHONE was around the city of Basehor and DeSoto before and/or after the crimes.

44.     In my training and experience, I have learned that AT&T Mobility (Cingular) is a company that provides cellular telephone access to the general public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

45.     Based on my training and experience, I know that AT&T Mobility (Cingular) can collect cell-site data about the SUBJECT PHONE.  I also know that wireless providers such as

AT&T Mobility (Cingular) typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

46.     Based on my training and experience, I know that wireless providers such as AT&T Mobility (Cingular) typically collect and retain information about their subscribers in their normal course of business.  This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service.  I also know that wireless providers such as AT&T Mobility (Cingular) typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business.  In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT PHONE's user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

47.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

48.     I further request that the Court direct AT&T Mobility (Cingular) to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.  Because the warrant will be served on AT&T Mobility (Cingular) who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

13

49.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court.  These documents discuss an ongoing criminal investigation that is that may not be known to all of the targets of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

Respectfully submitted,

Jakob E. Blackman
Task Force Officer
Bureau of Alcohol, Tobacco, Firearms and
Explosives

Sworn and attested by affiant via telephone, after being submitted to me by reliable electronic means on this 13th day of December, 2022

HONORABLE TERESA J. JAMES
UNITED STATES MAGISTRATE JUDGE

14

## ATTACHMENT A

### Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number **(816) 585-2039**, that are stored at premises controlled by AT&T Mobility (Cingular), Global Legal Demand Center, 11760 US Hwy 1, North Palm Beach, Florida, 33408.

## **ATTACHMENT B**

### **Particular Things to be Seized**

#### I. **Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period October 1, 2022 to October 19, 2022:

    a.  The following information about the customers or subscribers of the Account:

        i.  Names (including subscriber names, user names, and screen names);

        ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii.  Local and long distance telephone connection records;

        iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v.  Length of service (including start date) and types of service utilized;

        vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

        vii.  Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

2

       viii.   Means and source of payment for such service (including any credit card or bank account number) and billing records.

    b.  All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

        i.   the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

       ii.   information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received.

## II. Information to be Seized by the Government

All information described above in Section I that constitutes [evidence, fruits, contraband, and instrumentalities] of violations of Title 18, United States Code §922(u), 924(i) and 2 (Burglary to a Licensed Firearm Dealer) involving **Benjamin P. Custis** during the period October 1, 2022, to October 19, 2022.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

3

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC
## RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE
## 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct.  I am employed by AT&T Mobility ( Cingular), and my title is _____.  I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of AT&T Mobility (Cingular).  The attached records consist of _____

I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of AT&T Mobility ( Cingular), and they were made by AT&T Mobility ( Cingular)as a regular practice; and

b.      such records were generated by AT&T Mobility ( Cingular) electronic process or system that produces an accurate result, to wit:

1.      the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of AT&T Mobility ( Cingular) in a manner to ensure that they are true duplicates of the original records; and

2.      the process or system is regularly verified by AT&T Mobility ( Cingular), and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____        _____
Date                                                            Signature